FILED

August 19, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 2:10 PM



**TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT NASHVILLE**

| | | |
|---|---|---|
| **DEBORAH REVNEW** | ) | **Docket No.: 2016-06-0320** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 16063-2016** |
| | ) | |
| **AMAZON.COM,** | ) | **Judge Joshua Davis Baker** |
| **Employer.** | ) | |
| **and** | ) | |
| **AMERICAN ZURICH INS.,** | ) | |
| **Carrier.** | ) | |

**EXPEDITED HEARING ORDER**
**FOR MEDICAL BENEFITS**

This matter came before the Court on July 28, 2016, upon the Request for Expedited Hearing filed by the employee, Deborah Revnew, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. Revnew alleged injury from exposure to chemicals while working for the employer, Amazon.com. The present focus of this case is Ms. Revnew's entitlement to medical benefits and temporary disability benefits.[1] For the reasons set forth below, the Court holds Ms. Revnew will likely succeed at a hearing on the merits in proving her entitlement to medical benefits, and orders Amazon to provide those benefits. Ms. Revnew failed to prove entitlement to mileage and temporary disability benefits at this time.[2]

**History of Claim**

This case concerns injuries Ms. Revnew claims she suffered when exposed to chemicals while working in the hazardous materials (hazmat) area of Amazon's

---

[1] Ms. Revnew also cited reimbursement for mileage but presented no evidence of the miles she traveled to attend medical appointments. She attempted to present an exhibit concerning mileage but had already closed her proof. The Court notes her failure to present evidence on this issue at the expedited hearing does not alleviate Amazon's duty to reimburse her for any mileage expenses owed.

[2] A complete listing of exhibits and the technical record admitted at the Expedited Hearing is attached to this Order as an appendix.

fulfillment warehouse on January 29, 2016. In her affidavit, she identified the chemicals as lye powder, paint thinner, turpentine and gel stain.[3] (Ex. 2.)

Ms. Revnew described the hazmat area as a small block building in the back of the fulfillment center that resembled a basement on the inside. The area had a fairly low ceiling and commercial fans circulated air from above. Shelves holding cardboard bins lined the wall. The cardboard bins contained products sold through Amazon, and Ms. Revnew "picked" products from the bins to fulfill orders. Ms. Revnew stated that sometimes items in the bins leaked.

On January 29, Ms. Revnew smelled an odor in the room and left the hazmat area to report the odor to an ambassador, an Amazon employee who worked outside the hazmat area. Ms. Revnew suggested that the fans were increasing the odor and asked that they be turned down. The ambassador turned the fans off, and Ms. Revnew returned to the hazmat area.

Ms. Revnew testified her eyes began to burn and itch, but she continued to work. After her lunch break, Elizabeth, an Amazon employee with a leadership role in the hazmat area, removed some of the chemicals from the bins and showed them to Ms. Revnew. Ms. Revnew said the chemicals were in "ziplock bags." One of the bags contained a can of turpentine that had leaked. Elizabeth removed the turpentine from the hazmat area.

Ms. Revnew continued feeling ill: her lips started burning, she developed a headache and her heart started racing. She returned to the area where Elizabeth got the turpentine and discovered an open bag of lye powder, an open can of "thinner" and an open container of "blue gel stain." Ms. Revnew testified she had picked these items before and was familiar with what the chemicals were. The commercial fan was blowing down on top of the chemicals and Ms. Revnew believed this spread the odor further.

Ms. Revnew called Elizabeth over and showed her the open chemicals. She asked Elizabeth to either remove her or the chemicals from the hazmat area. Elizabeth removed the leaking bags of chemicals. After Elizabeth removed the chemicals, Ms. Revnew began experiencing blurred vision and her legs became heavy. Ms. Revnew told her she was not feeling well: she testified that her lips and eyes were burning, she felt dizzy, her heart was racing, she felt confused and she could not see.

---

[3] Ms. Revnew presented Material Safety Data Sheets through her testimony. (Ex. 3.) Amazon objected to their introduction. The Court took the objection under advisement and now sustains the objection, as the documents are irrelevant.

Elizabeth was standing next to a representative of AMCARE, Amazon's in-house employee wellness program, when Ms. Revnew reported the incident. According to Ms. Revnew, the AMCARE representative did not say anything to her but walked back to the area of the center where Elizabeth had previously taken the chemicals. After some time had passed, Ms. Revnew made her way toward AMCARE. She testified she had to stop and hold onto posts to keep from falling over. When she was about to fall over, she encountered two coworkers who placed her on a cart and called for AMCARE.

Ms. Revnew went to AMCARE and reported her symptoms. AMCARE took her blood pressure, which was high. Ms. Revnew left AMCARE to get some fresh air and retrieve some beverages. When she returned, her direct supervisor had arrived, and Ms. Revnew told her supervisor about the incident. Ms. Revnew testified she received no treatment at AMCARE before returning to her job duties. Despite returning, she continued to complain to her manager that she did not feel well. Ms. Revnew later returned to AMCARE where she received some eye drops and some aspirin. Amazon did not offer Ms. Revnew a panel or any additional treatment. She ended her shift early and went home. She was granted paid-time-off for the uncompleted portion of her shift.

When her symptoms had not abated the following day, Ms. Revnew went to a Carespot Clinic for assistance. (Ex. 1 at 13-15.) At Carespot, she reported being exposed to chemicals and complained of eye itching, head and chest congestion, a headache, dizziness, confusion, shortness of breath, a cough, burning lips and blackness around her eyes. The Carespot provider, Dr. Michelle Cowden, assessed chemical exposure and referred her to the emergency room for "prompt evaluation." The emergency room at Summit Medical Center saw Ms. Revnew the same day. The treatment notes state "Chemical exposure" in the section designated for "Primary Impression." *Id.* at 10. Summit Medical released her the same day and told her she could return to work on February 2, 2016. (Ex. 4.)

After returning to work on February 5, 2016, Ms. Revnew visited AMCARE again. An Associate First Report of Injury was completed that day. (Ex. 5.) Ms. Revnew testified that, during the visit, people from AMCARE or Amazon "interrogated" her about the incident for over three hours. At some point toward the end of the visit, Ms. Revnew signed a sheet asking that her case with AMCARE be closed. (Ex. 16.) Although the sheet states that the employee is not signing it under duress, Ms. Revnew testified the form was put in front of her face after the three hour session. She stated she did not understand the significance of the form when she signed it and believed signing the sheet meant only that she would no longer receive treatment through AMCARE. She described the care she received from AMCARE as "frightful" and "inadequate," and consistently testified she did not receive any additional medical care from Amazon.

On February 20, 2016, Ms. Revnew returned to Dr. Cowden at Carespot complaining of blurred vision, headaches and leg weakness. (Ex. 1 at 17.) Dr. Cowden again assessed chemical exposure. She recommended treatment by a neurologist and an ophthalmologist, and issued a note keeping Ms. Revnew off from work from the date of the visit until March 16, 2016. *Id.* at 19. Ms. Revnew followed up with both an ophthalmologist and a neurologist. *Id.* at 22-39.

According to the medical bills Ms. Revnew submitted, she used her private health insurance to pay for some of her medical treatment. (Ex. 15.)[4] A letter shows Amazon declined to pay for the treatment at Summit Medical. (Ex. 6.) Additionally, through a conversation with Amazon's workers' compensation insurer, Ms. Revnew learned Amazon had not reported the claim as of March 2, 2016. (Ex. 9.) On July 7, 2016, Amazon terminated Ms. Revnew. (Ex. 13.)

Ms. Revnew filed a Petition for Benefit Determination seeking temporary disability and medical benefits. (T.R.1.) When the parties could not settle their dispute through mediation, the mediator filed a Dispute Certification Notice certifying the disputed issues for trial. (T.R. 2.) Ms. Revnew then filed a Request for Expedited Hearing requesting that the Court review the claim file and issue an interlocutory order without an evidentiary hearing. (T.R. 3.) Amazon objected to her request and asked for an evidentiary hearing. (T.R. 4.) The Court granted Amazon's request and set an evidentiary hearing. (T.R. 5.)

At the evidentiary hearing, Ms. Revnew argued she got hurt at work and missed time as a result of her injuries. For that reason, she argued Amazon should be required to pay her medical bills and provide temporary disability benefits.[5]

Amazon argued Ms. Revnew failed to carry her burden of proving entitlement to temporary disability and medical benefits because she failed to prove her workplace injury resulted from chemical exposure. Specifically, Amazon argued that a test conducted on Ms. Revnew at Summit Medical near the time of the incident detected no

---

[4] Amazon objected to introduction of the medical bills arguing they were irrelevant because Ms. Revnew had not shown the care provided was reasonable and necessary for treatment of a work-related injury. As Amazon failed in its duty to provide Ms. Revnew a panel of physicians, it ran the risk of having to pay for care from physicians with whom she privately treated if the treatment if for the work-accident. *See Young v. Young Electric*, No. 2015-06-0860, 2016 TN Wrk. Comp. App. Bd. LEXIS 24 (Tenn. Workers' Comp. App. Bd. May 25, 2016). The medical records all list chemical exposure as an assessment of Ms. Revnew's condition. The objection is overruled.

[5] Ms. Revnew asked the Court to require Amazon to take her back on as an employee. The undersigned explained the Court's authority extends only to awarding workers' compensation benefits, which do not include employment reinstatement.

presence of chemicals.[6]   It further argued no doctor provided a sufficient opinion linking Ms. Revnew's condition to chemical exposure at Amazon.  Finally, Amazon argued that it declined to provide medical treatment because Ms. Revnew signed a form requesting that her case with AMCARE be closed, indicating she needed no further medical treatment.

**Findings of Fact and Conclusions of Law**

The following general principles govern adjudication of this proceeding.  Ms. Revnew has the burden of proof on all essential elements of her workers' compensation claim.  *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987); *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).  She need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing.  *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).  At an expedited hearing, Ms. Revnew has the burden to come forward with sufficient evidence from which this Court can determine that she is likely to prevail at a hearing on the merits.  *See* Tenn. Code Ann. § 50-6-239(d)(1) (2015).

## I.      Ms. Revnew suffered a work-related injury.

To recover benefits, Ms. Revnew must prove she suffered an "injury" as that term is defined by the Workers' Compensation Law:  "Injury means an injury by accident . . . arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14) (2015).  In order to be compensable as an injury by accident, the injury must be "caused by a specific incident, or set of incidents, arising primarily out of an in the course and scope of employment, and is identifiable by time and place of occurrence[.]"  *Id*. at § 50-6-102(14)(A).  "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty-percent (50%) in causing the injury, considering all causes."  *Id*. at § 50-6-102(14)(B).

In addition to factual circumstances demonstrating injury, medical causation also must be proven.  Except in "the most obvious, simple and routine cases," an injured employee must establish by expert medical testimony that he or she is injured and that there exists a causal relationship between the injury and the claimant's employment activity.  *Wheetley v. State*, No. M2013-01707-WC-R3-WC, 2014 Tenn. LEXIS 476

---

[6] The Court searched the record and found results from what appeared to be a regular blood test.  It found no information concerning a specific test for chemical exposure.  Furthermore, if a specific test for chemical exposure is  part of the record, Amazon failed to direct the Court to that information.

(Tenn. Workers' Comp. Panel June 25, 2014) (citing *Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 274 (Tenn. 2009); *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008)). The cause of this injury must be shown to a reasonable degree of medical certainty, meaning, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D) (2015). Evidence of medical causation is not, however, required to recover medical benefits in the context of an expedited hearing. *See Lewis v. Molly Maid*, No. 2015-06-0456 TN Wrk Comp. App. Bd. 2016 LEXIS 19 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2016).

In this Court's opinion, Ms. Revnew's testimony that she encountered open containers of chemicals in the hazmat area on January 29, 2016, and immediately began experiencing severe symptoms satisfies her burden of proving the condition arose from an incident identifiable by time and place of occurrence. *See* Tenn. Code Ann. § 50-6-102(14)(A) (2015). Ms. Revnew identified the chemicals, which she knew from her previous experiences in packing them for shipment, and testified a commercial fan was blowing down and circulating fumes from the chemicals throughout the room.

The Court further finds the exposure incident arose primarily out of and in the course and scope of her employment. *See id*. at 50-6-102(14)(B). According to her testimony, Ms. Revnew began experiencing her symptoms during her shift at Amazon, and there is no countervailing proof to show the chemicals were either unopened or she was not exposed to them.

The Court finds Ms. Revnew provided credible testimony concerning the factual circumstances that resulted in her condition. Additionally, the limited medical proof indicates the doctors who treated her agreed chemical exposure was a concern. Although no doctor used causation language, each assessed chemical exposure in their treatment notes. Accordingly, the Court disagrees with Amazon's position that there is no proof of causation. While the causation information would not be sufficient to sustain a benefit award at a final hearing, the diagnoses coupled with Ms. Revnew's testimony is sufficient to carry her burden of proof for this expedited hearing. The Court therefore holds Ms. Revnew would likely prevail at a hearing on the merits in proving she suffered a compensable workplace "injury" as the term is defined by the Workers' Compensation Law.

## II.    Ms. Revnew is entitled to medical benefits.

Ms. Revnew seeks medical care for her work-related injury including payment of past medical bills. Having carried her burden of proving she would likely succeed at a hearing on the merits in proving compensability of her injury, Amazon must provide her reasonable and necessary medical care for its treatment. *See* Tenn. Code Ann. § 50-6-

204(a)(l)(A) (2015).  Upon being provided notice of a workplace injury, the Workers' Compensation Law requires an employer to "designate a group of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups if available in the injured employee's community or, if not so available, in accordance with subdivision (a)(3)(B), from which the injured employee shall select one (1) to be the treating physician."  *Id.* at 50-6-204(a)(3)(A)(i).  The administrative rules governing procedures in the Bureau of Worker's Compensation provide, "[u]pon notice of any workplace injury, other than a minor injury for which no person could reasonably believe requires treatment from a physician, the employer shall immediately provide the injured employee a panel of physicians that meets the statutory requirements for treatment of the injury."  Tenn. Comp. R. & Regs. 0800-02-01-.25(1) (2015).  Failure to provide a panel could result in the assessment of a civil penalty of up to $5,000 against the employer.  *See* Tenn. Comp. R. & Regs. 0800-02-01-.25(1) (2015).

Here, Ms. Revnew provided notice of her workplace accident to Amazon on the day it occurred.  The proper thing to do at that time would have been to provide Ms. Revnew a panel of physicians.  Amazon failed to do that.  While Amazon argued Ms. Revnew demonstrated she did not want further medical treatment when she signed the form waiving additional treatment from AMCARE, the Court does not find the argument persuasive in light of Ms. Revnew's testimony concerning the inadequacy of care she received from AMCARE.  Additionally, Ms. Revnew did not understand that she would not receive care from a physician if she signed the form.  In this Court's view, Amazon failed in its duty to provide Ms. Revnew appropriate care for her condition and then attempted to gloss over that failure by having her sign the form.

Ms. Revnew also seeks payment for past medical expenses.   The Court finds she is entitled to them.  An employer who fails to provide a medical panel runs the risk of being required to pay the cost of treatment an employee secures on her own.  *See Young v. Young Electric Co., et al.*, No. 2015-06-0860 2016 Tn. Wrk Comp. App. Bd. LEXIS 24, at *16-19 (Workers' Comp. App. Bd. May 25, 2016).  When Amazon failed to provide Ms. Revnew a panel of physicians, she sought treatment on her own from Dr. Cowden at Carespot.  Dr. Cowden instructed her to go to the emergency room, and later recommended an examination by a neurologist and an ophthalmologist.  Ms. Revnew incurred significant medical bills for this treatment and submitted the bills as an exhibit.  The Court holds Amazon must pay all the medical bills.  Additionally, the Court holds Amazon must pay for any future reasonable and necessary medical care related to her exposure injury and appoints Dr. Cowden as the authorized treating physician.

**III.    Ms. Revnew's claim for temporary disability benefits is denied at this time.**

Ms. Revnew additionally seeks temporary disability benefits.  In *Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), the Appeals Board held:

> An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978).

Until these criteria are established, the Court cannot grant temporary disability benefits. Ms. Revnew failed to carry her burden of proving entitlement to those benefits because she failed to establish the period of time she was off work as a result of the chemical exposure injury.  The record contains a note from Dr. Cowden taking Ms. Revnew off work from February 20 through March 16, 2016.  Although the note excused Ms. Revnew from work, the Court heard no testimony concerning the number of days she actually missed.  Because Ms. Revnew failed to present evidence concerning the amount of work she missed, the Court denies her claim for temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Amazon shall provide Ms. Revnew medical care with the authorized treating physician, Dr. Cowden.

2. Amazon shall pay all the past medical expenses Ms. Revnew incurred in getting treatment for her exposure injury which includes the medical bills of Dr. Cowden, Summit Medical Center, Dr. Zhou, Middle Tennessee Imaging and Summit Eye Associates.

3. Ms. Revnew's request for temporary disability benefits is denied at this time.

4. This matter is set for an Initial (Scheduling) Hearing on September 19, 2016, at 9:30 a.m. (CDT).

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015).   The Insurer or Self-Insured Employer must submit confirmation of

compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED ON THIS THE 19TH DAY OF AUGUST, 2016.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial (Scheduling) Hearing has been sent for **September 19, 2016, at 9:30 a.m. Central Time** with **Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note:** **You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a filing fee in the amount of $75.000. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board.

6.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:

1. Medical Records
2. Affidavit
3. Material Safety Data Sheets – for identification purposes only
4. Fax cover sheet and attached LOAA (2 pgs.) – dated February 3, 2016
5. Associate First Report of Injury dated February 5, 2016 (4 pgs.)
6. Convergent letter dated February 15, 2016
7. Fax cover/Michelle Cowden dated February 24, 2016
8. Claim Status Summary dated March 3, 2016
9. Recording/CD of telephone conversation
10. Email sent to Amazon Human Resources March 3, 2016
11. Helios Pharmacy Benefits notification
12. Denial letter for Short Term Disability dated April 14, 2016
13. Amazon Termination letter
14. Michelle Cowden addendum February 28, 2016
15. Medical bills
16. AMCARE Case Closure Request form

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Objection to Request for Expedited Hearing – file review only
5. Order granting evidentiary hearing request
6. Ms. Revnew's Witness and Exhibit List
7. Amazon's Witness and Exhibit List
8. Amazon's Prehearing Brief

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 19 th day of August, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| **Deborah Revnew** | x | | | 198 Peace Ave. Lebanon, TN 37087 |
| **Charles E. Pierce** | | | x | cepierce@mijs.com |

**Penny Shrum, Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

12